Commonwealth *v.* Reagen, Appellant.

Submitted January 10, 1972. Before JONES, C. J., EAGEN, O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

*Frederick J. Lanshe,* Public Defender, for appellant.

*Wardell F. Steigerwalt,* Assistant District Attorney, and *George J. Joseph,* District Attorney, for Commonwealth, appellee.

OPINION BY MR. CHIEF JUSTICE JONES, April 20, 1972:

On April 15, 1968, Daniel Reagen (appellant) pleaded guilty to a general charge of murder and an additional charge of robbery. After a hearing on the murder charge before a court en banc for the purpose of determining the degree of guilt, the appellant was found guilty of murder in the first degree and sentenced to life imprisonment. Appellant also was sentenced to a term of ten to twenty years on the robbery charge.

In May of 1970, the appellant filed a petition for post-conviction relief, under the Post Conviction Hearing Act,* alleging, *inter alia,* that he had not been informed of his appeal rights and that his guilty plea was not knowingly, intelligently and voluntarily entered. After a hearing at which appellant was represented by counsel, the court dismissed appellant's petition. An appeal was filed out of time and dismissed.

---

* Act of January 25, 1966, P. L. (1965) 1580, §1 *et seq.,* 19 P.S. §1180-1 *et seq.*

We subsequently remanded for appointment of counsel and allowed the instant appeal.

Appellant's primary contention is that his guilty plea was not knowingly, intelligently and voluntarily made and is, therefore, void. *Boykin v. Alabama,* 395 U.S. 238, 89 S. Ct. 1709, 23 L. ed. 274 (1969); *Com. v. Marsh,* 440 Pa. 590, 271 A. 2d 481 (1970). In support of this contention, appellant argues that his guilty plea was motivated primarily by his fear of the death penalty. At the PCHA hearing both of appellant's trial counsel testified that they informed the appellant that, in their opinion, the death penalty would be the likely result of a jury trial. In addition, the record shows that the alternatives were fully and carefully explained to the appellant. Even if a fear of the death penalty was appellant's sole motive in pleading guilty, this fact in and of itself is not sufficient to render the guilty plea involuntary. The United States Supreme Court has said, in *North Carolina v. Alford,* 400 U.S. 25, 31, 27 L. ed. 162, 91 S. Ct. 160 (1970): "We held in Brady v. United States, 397 U.S. 742 (1970), that a plea of guilty which would not have been entered except for the defendant's desire to avoid a possible death penalty and to limit the maximum penalty to life imprisonment or a term of years was not for that reason compelled within the meaning of the Fifth Amendment. *Jackson* established no new test for determining the validity of guilty pleas. The standard was and remains whether the plea represents a voluntary and intelligent choice among the alternative courses of action open to the defendant. [Citations omitted]. That he would not have pleaded except for the opportunity to limit the possible penalty does not necessarily demonstrate that the plea of guilty was not the product of a free and rational choice, especially where the defendant was represented by competent counsel whose ad-

vice was that the plea would be to the defendant's advantage." We adopted this principle in *Alford* in *Com. v. Henderson,* 441 Pa. 255, 272 A. 2d 182 (1971).

Despite our holding in *Henderson,* this Court, in the recent decision of *Com. v. Wright,* 444 Pa. 588, 282 A. 2d 266 (1971), reversed a finding of first-degree murder after the entry of a guilty plea by the defendant. In so doing, the Court held that the defendant's plea was not knowingly and intelligently entered since it was based on erroneous information. In *Wright,* after a judgment of sentence of life imprisonment had been reversed, the defendant entered a plea of guilty. On appeal, he asserted that his guilty plea was motivated by both his counsel's and the court's statements that, notwithstanding his earlier sentence, he might still be sentenced to death in the second trial. In reversing this obvious error, the Court said: "[H]erein, Wright was deprived of properly evaluating and asserting these rights by a false understanding inspired by erroneous advice received both from his trial counsel and the court." 444 Pa. at 591, 282 A. 2d at 267.

The instant case is factually and legally distinguishable from *Wright.* Here, the issue is not whether the appellant could make an intelligent and knowing choice but whether his choice was voluntary. In the instant case there was no erroneous statement of the alternatives; appellant was faced with a very real possibility of receiving the death sentence. As we said, in distinguishing *Wright* from *Parker v. North Carolina,* 397 U.S. 790, 90 S. Ct. 1458 (1970), and *Brady v. United States,* 397 U.S. 742, 90 S. Ct. 1463 (1970), "different questions are involved where the court is faced with determining the voluntariness of a guilty plea, as distinguished from whether or not such a plea is knowingly and intelligently entered." 444 Pa. at 592, 282 A. 2d at 268. The instant case is controlled by *Parker,*

*Brady* and *Alford* and, viewing the facts in the light of these decisions, it is obvious that appellant's contention is without merit.

Appellant next argues that his guilty plea was primarily motivated by an involuntary confession. In *Com. v. Marsh*, 440 Pa. 590, 271 A. 2d 481 (1970), we held that, in order to successfully attack a guilty plea on the grounds asserted by the appellant in the instant case, he must show: (1) the existence of an involuntary pretrial confession; (2) that the guilty plea was primarily motivated by the confession; and (3) that he was incompetently advised by counsel to plead guilty, in the circumstances, rather than stand trial. Here appellant falls far short of fulfilling the requirements of *Marsh*. In fact, the sole allegation in support of his contention is that he gave his confession in order to protect his younger brother, who was also involved in the crime.

Prior to the entry of the guilty plea in this case, a suppression hearing was held, at which time the court decided that the appellant's confession was admissible. Furthermore, at the time of the entry of the guilty plea there was an extensive on-the-record colloquy between the court and the appellant in which the court thoroughly explained the appellant's rights to him and inquired into his motivation. Examining the facts in light of *Marsh,* it is obvious that appellant's arguments are without merit. Appellant's bald assertion that his plea was motivated by an allegedly illegal confession lacks support in the record. There appears in the transcript approximately twenty pages of colloquy between the court, appellant and his counsel discussing the circumstances under which the appellant's confession was secured and the part it played in his decision to plead guilty. At no time during this colloquy did the appellant contest the introduction of the confession. Last-

ly, counsel's advice to plead guilty cannot be said to be outside "the ambit of that which could reasonably be given by counsel in a criminal case in the circumstances." *Com. v. Brown,* 443 Pa. 21, 26, 275 A. 2d 332, 334 (1971).

Appellant next contends that he was not informed that he could request a withdrawal of his guilty plea during the thirty-eight day interval between the entry of the guilty plea and the hearing before the court en banc. Appellant concedes that there are no Pennsylvania cases or statutes which mandate such a duty upon the court and counsel. Even assuming that he had the right to be so informed, any problems arising out of a failure to so warn him in the thirty-eight day period were cured by the court's colloquy at the degree-of-guilt hearing. Again, the record exhibits that, at both the entry of the plea and the degree-of-guilt hearing, the court went to great lengths to establish that appellant understood the nature and consequences of his plea and that he was making it of his own free choice.

We have held that the right of a defendant to withdraw a guilty plea is not absolute. *Com. v. Phelan,* 427 Pa. 265, 234 A. 2d 540 (1967). In *Com. v. Scoleri,* 415 Pa. 218, 247-48, 202 A. 2d 521, 536 (1964), we held that a guilty plea could be withdrawn under the following conditions: (a) where it has been entered in ignorance of the nature of the crime with which defendant has been charged and the consequences of his plea; or (b) where the plea of guilty was not made freely and voluntarily; or (c) where the plea was entered by mistake or without the consent of the defendant; or (d) where the plea was entered by an uncounseled defendant in a homicide case or in a felony case in which the defendant was indigent or was refused counsel; or (e) where the plea was induced by fraud or threats or

justifiable fear; or (f) where a trial or hearing judge has made, but not kept, a promise or commitment which induced the plea; or (g) where, because of very unusual circumstances, the court believes that justice will best be served by submitting the case to a jury. *Accord, Com. v. Dillinger,* 440 Pa. 336, 340 n.4, 269 A. 2d 505, 507 n.4 (1970); *Com. v. Evans,* 434 Pa. 52, 56 n.1, 252 A. 2d 689, 691 n.1 (1969); *Com. v. Phelan,* 427 Pa. 265, 234 A. 2d 540 (1967). Appellant does not allege nor does the record reveal any circumstances that would merit the withdrawal of the guilty plea. The appellant was informed of his rights before the degree-of-guilt hearing and had more than ample opportunity to request a withdrawal of his plea had he chosen to do so.

Finally, appellant contends that he was not properly informed of his right to appeal. This argument was refuted at the PCHA hearing by the testimony of both of appellant's trial counsel. They testified that they had indicated to the appellant immediately after the conclusion of the trial that he had a right to appeal the court's decision and that an attorney would be provided if he could not afford one.

Order affirmed.

Mr. Justice ROBERTS concurs in the result.